IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRITISH TELECOMMUNICATIONS PLC ) 
and BT AMERICAS, INC., )
)
      Plaintiffs, )
)
v. )  C.A. No. 18-1018 (CFC) (MPT)
)
FORTINET, INC., )  REDACTED - PUBLIC VERSION
)
      Defendant. )

**DEFENDANT FORTINET'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS UNDER RULE 12(b)(1) AND
THE DOCTRINE OF *FORUM NON CONVENIENS***

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

John (Jay) Neukom
James Y. Pak
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
(650) 470-4500

Originally Filed: October 1, 2018
Redacted Version Filed: October 9, 2018

# TABLE OF CONTENTS

Page

I.   NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

II.  SUMMARY OF ARGUMENT ...........................................................................................1

III. STATEMENT OF FACTS ...................................................................................................2

    A.   The BT Plaintiffs..........................................................................................................2

    B.   Defendant Fortinet .......................................................................................................2

    C.   The Agreement.............................................................................................................3

        i.   ███████████████ ..............................................................3

        ii.  █████████████████████ ..............4

IV.  LEGAL FRAMEWORK ......................................................................................................5

V.   ARGUMENT .......................................................................................................................8

    A.   ████████████████████████ ..............8

    B.   █████████████████████████
                        ██████████████ .......................11

    C.   ██████████████████ .......................13

    D.   ████████████████████ .................14

        i.   ████████████████████████
                            .........................14

        ii.  ████████████████████████
                             ...........16

VI.  FORTINET'S ALTERNATIVE REQUEST .......................................................................19

VII. CONCLUSION...................................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.,*
    571 U.S. 49 (2013) ...................................................................................... *passim*

*AMTO, LLC v. Bedford Asset Mgmt., LLC,*
    168 F. Supp. 3d 556 (S.D.N.Y. 2016) .............................................................11

*Collins v. Mary Kay, Inc.,*
    874 F.3d 176 (3d Cir. 2017) ........................................................................ *passim*

*Foster v. Chesapeake Ins. Co., Ltd.,*
    933 F.2d 1207 (3d Cir. 1991) .........................................................................14

*Gotha v. United States,*
    115 F.3d 176 (3d Cir. 1997) .............................................................................5

*In re Apple, Inc.,*
    581 F. App'x 886, 888 (Fed. Cir. 2014) ...........................................................6

*La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.,*
    No. 02-CV-40, 2002 WL 31812679 (S.D.N.Y. Dec. 12, 2002) ................................19, 20

*Moose Toys Pty, Ltd. et al. v. Creative Kids Far E. Inc.,*
    195 F. Supp. 3d 599 (S.D.N.Y. 2016), ......................................................13, 19

*Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.,*
    714 F. App'x 186 (3d Cir. 2017) .....................................................................14

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ..........................................................................................7

*Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S,*
    907 F. Supp. 2d 401 (S.D.N.Y. 2012) .......................................................... *passim*

*Street, Sound Around Elecs., Inc. v. M/V Royal Container,*
    30 F. Supp. 2d 661 (S.D.N.Y. 1999) ...............................................................20

*United States v. Warren,*
    338 F.3d 258 (3d Cir. 2003) ............................................................................17

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.,*
    633 F. Supp. 1209 (W.D.N.Y. 1986) ..............................................................16

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.,*
        806 F.2d 1045 (Fed. Cir. 1986)..................................................................16, 19

**English Authority**

*Aspen Underwriting Ltd. & Ors v. Kairos Shipping Ltd. & Ors,*
        [2017] EWHC 1904 (Comm)..................................................................12

*Celltech Chrirosicence Ltd v. MedImmune Inc.,*
        [2003] EWCA (Civ) 1008, 2003 WL 21554593 ...........................................19

*Chugai Pharm. Co. Ltd v. UCB Pharm. SA.,*
        [2017] EWHC 1216 (Pat) .....................................................................11, 19

*Chugai Pharm. Co. Ltd v. UCB Pharma S.A.,*
        [2018] EWHC 2264 (Pat) .....................................................................19

*Fili Shipping Co. Ltd. v. Premium Nafta Prods. Ltd.,*
        [2007] UKHL 40 ...............................................................................10, 11

*Fiona Tr. & Holding Corp. v. Privalov,*
        [2007] EWCA (Civ) 20........................................................................10, 11

*Gerling  v. The Italian State Treasury,*
        [1984] ECR 2503 ..............................................................................12

*Refcomp S.P.A. v. AXA Corp. Sols. Assurance S.A.,*
        [2013] I.L.Pr. 17 (CJEU) ......................................................................12

*Shogun Fin. Ltd. v. Hudson,*
        [2004] 1 A.C. 919 ...............................................................................12

*Tilly Russ v. Haven & Vervoebedrijf Nova N.V.,*
        [1985] 3 W.L.R. 179 (ECJ)....................................................................12

*UBS AG v. HSH Nordbank AG,*
        [2009] EWCA (Civ) 585.......................................................................11

Adrian Briggs, *Civil Jurisdiction & Judgments* (6th ed. 2015) ...........................12

Lord Collins of Mapesbury & Jonathan Harris QC, *Dicey, Morris & Collins on The*
        *Conflict of Laws* (15th ed. 2017)...........................................................11

## **Other Authorities**

Eric Chan, *Asserting Foreign Patent Claims in U.S. Federal Courts: What's Left after*
      *Voda v. Cordis?*, 18 Alb. L.J. Sci. & Tech. 1 (2008)..........................................................19

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs British Telecommunications plc ("BT plc") and BT Americas, Inc. ("BT Inc.") (collectively, "BT") filed this patent case on July 10, 2018.  *See* D.I. 1 ("Complaint").  BT plc is asserting three patents against Defendant Fortinet, Inc. ("Fortinet") in Counts III, IV and V.  BT Inc. is asserting two patents in Counts I and II.

Fortinet has now moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1) and/or the doctrine of *forum non conveniens*.  This is Fortinet's Opening Brief in support of that motion.

## II.   SUMMARY OF ARGUMENT

In this five-patent case, two companies that are part of the global "BT" conglomerate are asserting infringement claims against Fortinet, a publicly-traded company based in California that designs, fabricates and sells network security solutions.  Fortinet moves to dismiss all claims under Rule 12(b)(1) and/or the doctrine of *forum non conveniens*.  The *forum non conveniens* doctrine applies here given the parties' prior written agreement ████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

In particular, while BT plc is the lead plaintiff in this case, and the alleged owner of three patents asserted against Fortinet, BT plc is also a signatory to a 2016 contract with Fortinet.  *See* Declaration of Thomas Schmidt ("Schmidt Decl."), Ex. 1 ("Agreement").  Pursuant to that Agreement, ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████



## III.   STATEMENT OF FACTS

### A.   The BT Plaintiffs

The named plaintiffs allege they are part of the BT corporate family, a global conglomerate based in London that offers telecommunications and related products and services. Complaint at ¶¶ 14-18. As described below—and not mentioned in the Complaint—among the products and services that BT plc, BT Inc. and other BT companies sell around the world are **Fortinet** products and services, including those that BT is now accusing of patent infringement.

### B.   Defendant Fortinet

Fortinet designs, fabricates and sells network security products and services around the world. The company is arguably best known for its "FortiGate" products—sometimes referred to as "firewalls"—which include Fortinet-proprietary hardware and software that (*inter alia*) help protect a user's computing network from security threats. *See* Schmidt Decl. at ¶ 3.[1]

Fortinet was founded 18 years ago, and has been publicly-traded since 2009 on the NASDAQ exchange (ticker: FTNT). Fortinet currently employs over 5,400 people. The company has over 530 issued patents, and has over 200 patent applications currently pending. Fortinet maintains its headquarters in Sunnyvale, California, although it has offices around the

---

[1]   *See also* https://www.fortinet.com/products/next-generation-firewall.html.

world, including two in England (in Reading and London).  *See* Schmidt Decl. at ¶ 3.[2]

**C.**        **The Agreement**

In 2015-16, in-house attorneys for Fortinet and BT negotiated and then executed a written

contract, the Agreement on which this motion relies.  *See* Schmidt Decl. at ¶ 10. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

        *i.*        ████████████████████████

        ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[2]   *See    also*    https://www.fortinet.com/corporate/about-us/about-us.html;    *and    see*
https://www.fortinet.com/corporate/about-us/contact-us.html    (providing    links    to    access
Fortinet office locations around the world, including two offices in England).



*ii.*



See Schmidt Decl. at ¶ 7.

## IV.   LEGAL FRAMEWORK

In the 2013 decision *Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.* ("*Atlantic Marine*"), the Supreme Court held that "the appropriate way to enforce a forum-selection clause pointing to a…foreign forum ▮▮▮▮▮▮▮▮▮ is through the doctrine of *forum non conveniens*." 571 U.S. 49, 60. Fortinet thus brings the instant motion pursuant to both the doctrine of *forum non conveniens*, as expressly endorsed in *Atlantic Marine*, as well as Rule 12(b)(1). *See Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S*, 907 F. Supp. 2d 401, 406-07 (S.D.N.Y. 2012) ("*Martin*") (accepting the *forum non conveniens* movant's invocation of Rule 12(b)(1) in circumstances closely analogous to this case; in *Martin*, the plaintiff attempted to assert U.S. patent rights in a U.S. district court in violation of the parties' prior contractual agreement that they would assert claims against each other only in the courts of England).[4] Rule 12(b)(1) permits this Court to consider Fortinet's supporting materials, such as the Agreement and the Schmidt Declaration. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997) (under Rule 12(b)(1), courts are "not confined to allegations in the plaintiff's complaint, but could consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction").

The Supreme Court in *Atlantic Marine* made especially clear how deferential federal

---

[4] The *Martin* court noted that Rule 12(c) was applicable as a matter of formality, given that the defendant there (unlike here) had already filed an answer. *Id.* at 406. But the court then proceeded to apply Rule 12(b)(1) standards. *Id.* at 406-07 ("Martin styles the Motion as brought pursuant to Rule 12(b)(1)…the Court will treat the Motion as such").

district courts should be when faced with an applicable forum-selection clause:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the "interest of justice" is served by holding parties to their bargain.

571 U.S. at 66; *see also id.* at 63 ("**a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases**") (quotation marks omitted, brackets from original, emphasis added); *id.* (holding that "the plaintiff's choice of forum merits no weight" when there is a valid forum-selection clause); *id.* (holding that the plaintiff—not the *forum non conveniens* movant—"bears the burden of establishing that…the forum for which the parties bargained is unwarranted"); *id.* at 64 (holding that in opposing a *forum non conveniens* motion, the plaintiff may not cite "arguments about the parties' private interests"); *id.* (holding that "a district court may consider arguments about public-interest factors only" in deciding whether a forum-selection clause defeats the plaintiff's chosen forum; observing that "[b]ecause those factors will rarely defeat a [*forum non conveniens*] motion, the practical result is that forum-selection clauses should control except in unusual cases…[which] will not be common").

Under Third Circuit law,[5] the analysis of whether to dismiss a claim under the *forum non conveniens* doctrine based on a contractual forum-selection clause may be broken down into at least two components—applicability and enforceability—each governed by different law.[6] The

---

[5] *See, e.g., In re Apple, Inc.*, 581 F. App'x 886, 888 (Fed. Cir. 2014) (unpublished) (applying regional circuit law in reviewing application of *forum non conveniens* factors: "We apply regional circuit law…to procedural issues and issues that do not involve substantive patent law.").

[6] ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*(cont'd)*

**first** component is to determine whether the forum-selection clause applies to the disputed claims. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████ *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 185-86 (3d Cir. 2017) (applying the asserted contract's chosen law to address questions of forum-selection clause scope).

For the **second** component of the analysis—whether the forum-selection clause should then be enforced by the court—that by contrast is governed by federal common law. *Collins*, 874 F.3d at 181 ("Applying federal law to questions of enforceability of forum selection clauses comports with settled law in this Circuit."). In deciding whether a forum-selection clause should be enforced, under federal law, the Supreme Court held in 2013 that federal courts may consider "public-interest factors **only**." *Atlantic Marine*, 571 U.S. at 64 (emphasis added). According to the Supreme Court, those public-interest factors "may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)).

Finally, although Fortinet is the movant here, it does not bear the burden of showing that

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

---
*(cont'd from previous page)*
████████████████████████████████████ *See* Section V(c) below.

7

## V.   <u>ARGUMENT</u>

A.   ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

- ██████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████████████████████████████

  ████████████████   ████████████████████

  █████████████████████████████████

- ██████████████████████████████████████

  ████████████████████████████████████████

8



- Even if there were not (there are, as explained in the preceding bullet points)

numerous areas of overlap or contradiction between BT plc's allegations in the 2018 Complaint as compared to the terms of the 2016 Agreement, it nonetheless remains the case that BT plc's Counts III, IV and V assert "non-contractual" "obligations" allegedly owed by Fortinet to BT plc.  Specifically, BT plc asserts that Fortinet is obligated to pay damages for patent infringement.  *E.g.*, Complaint at ¶ 128.

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

BT plc cannot assert IP rights against Fortinet—whether through U.S. patents, non-U.S. patents, or other forms of IP—████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████  Furthermore, BT plc cannot assert **any** claims against Fortinet—whether rooted in alleged IP rights or not—anywhere except in England.  ████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████  In *Fiona Tr. & Holding Corp. v. Privalov*, [2007] EWCA (Civ) 20, [18], the English Court of Appeal held "any jurisdiction or arbitration clause in an international commercial contract should be liberally construed," and rejected arguments that specific phrases (such as "arising out of" versus "in connection with") should be parsed finely to limit the scope of the jurisdictional clause in question.  *See also Fili Shipping Co. Ltd. v.*

*Premium Nafta Prods. Ltd.*, [2007] UKHL 40, [12-13] (now the U.K. Supreme Court, affirming *Fiona Trust* in relevant respects). In *UBS AG v. HSH Nordbank AG*, [2009] EWCA (Civ) 585, [82], the Court of Appeal applied the same reasoning to a forum-selection clause in particular: "The proper approach to the construction of clauses agreeing to jurisdiction is to construe them widely and generously." English authorities have likewise made clear that the *Fiona Trust* doctrine under English law means that forum-selection clauses should be interpreted to apply to all claims between parties—to be resolved in a single forum—even if some claims do not rely on the contract in question. *See* Lord Collins of Mapesbury & Jonathan Harris QC, *Dicey, Morris & Collins on The Conflict of Laws*, § 12-109 (15th ed. 2017) ("[A]s a matter of English law the proper approach to such clauses was to treat the parties as rational commercial actors who would have had no reason to prescribe jurisdiction over some parts, but not over other parts, of what might be a claim which advanced alternative causes of action, some but not other parties of which were plainly contractual."); *see also Chugai Pharm. Co. Ltd v. UCB Pharma S.A.* [2017] EWHC 1216 (Pat), [35] (applying the "general principle that jurisdiction clauses are to be interpreted 'widely and generously,' as commercial parties who agree to an exclusive forum clause are likely to have intended their disputes to be resolved in a single forum"); *see also AMTO, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 564-68 (S.D.N.Y. 2016) (surveying and applying English law to interpret a forum-selection clause, broadly, including to cover claims not facially subject to the forum-selection clause but for which there were possible "defenses" and "counterclaims" that were arguably related to the contractual relationship).

**B.** ████████████████████████████████████████

The same applicability analysis pertains with equal force to Counts I and II, asserted by BT Inc., in all respects except one. ████████████████████████

11



Under the agency doctrine, for example, where an agreement is entered into by an agent, the principal will be bound by the jurisdiction clause contained within it. *See Aspen Underwriting Ltd & Ors v. Kairos Shipping Ltd & Ors.* [2017] EWHC 1904 (Comm). A principal need not be named explicitly in the agreement; rather, extrinsic evidence can be adduced to prove that the agreement was entered into on behalf of the principal. *See Shogun Finance Ltd v. Hudson* [2004] 1 A.C. 919.

But more importantly: For purposes of an "applicability" inquiry—with respect to BT Inc. in particular, as opposed to BT plc—this Court does not have to resolve that issue at this stage.

---

[7]   The Contracts (Rights of Third Parties) Act 1999 allows a third party to assert a contract which was made for its benefit but to which it is not a signatory. Following *Gerling v. The Italian State Treasury* ([1984] ECR 2503), that third party will be entitled to rely on the forum selection clause, and it is arguable that that third party may also be bound by the forum-selection clause, at least in circumstances where that clause complies with relevant EU law (which § 17.4 does). *See* Adrian Briggs, *Civil Jurisdiction & Judgments*, § 2.135 (6th ed. 2015).

[8]   BT Inc. may also be bound by other doctrines as well. For example, where the non-signatory succeeds to a party's rights and obligations under the contract, it will also be bound by its forum-selection clause. *Tilly Russ v. Haven & Vervoebedrijf Nova N.V.* [1985] 3 W.L.R. 179 (ECJ). And even if the party does not fully succeed to the rights and obligations, it will nevertheless be bound by the forum-selection clause if it is deemed to have consented to the clause under the conditions set out by the relevant EU law. *See Refcomp SPA v. AXA Corporate Solutions Assurance SA* [2013] I.L.Pr. 17 (CJEU).

12

██████████████████████████████—then this Court should defer additional

questions of applicability with respect to BT Inc. to the courts of England.  In *Moose Toys Pty,*

*Ltd. et al. v. Creative Kids Far E. Inc.*, 195 F. Supp. 3d 599 (S.D.N.Y. 2016), the court granted a

motion to dismiss on *forum non conveniens* grounds where there existed a forum-selection clause

designating Australia as the court of exclusive jurisdiction.  ████████████████████████

████████████████████████  In moving to dismiss, the defendants argued that

the non-signatory plaintiffs were nevertheless bound by the relevant agreement's forum-selection

clause because they were successors-in-interest or closely-related to the signatory plaintiff.  *Id.*

The court granted the motion to dismiss in its entirety.  In doing so, it held that:

> Whether the non-signatory Plaintiffs are successors-in-interest or "closely related"
> to the signatory Plaintiff—Moose Enterprise—so as to subject them to the Forum
> Selection Clause **raises an issue of fact that falls to the Australian courts to**
> **decide**.   Likewise, whether Creative U.S., a non-signatory defendant to the
> License  Agreement,  may  enforce  the  Forum  Selection  Clause  against  the
> Plaintiffs, **also constitutes a question to be decided by an Australian court**.
> This Court, therefore, declines to rule on these factual disputes and dismisses this
> case in its entirety.

*Id.* at 605 (emphasis added).



**C.**   ████████████████████████

Some recent Third Circuit case law (unpublished) suggests that the "validity" of a forum-

selection clause may also be considered in the context of a *forum non conveniens* motion as a

distinct inquiry from the clause's applicability (addressed above) or its enforceability (addressed

below ). *Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*, 714 F. App'x 186, 189-90 (3d Cir. 2017) (evaluating the "validity" of the asserted forum-selection clause in a separate section, and by citing separate considerations, than a subsequent section regarding whether the clause "should be enforced").[9]



*See* Schmidt Decl. at ¶ 7.

**D.** ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

   *i.* ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

The Supreme Court made clear in 2013 that if any disputed claims fall within the scope of a contract's forum-selection clause, then a district court must enforce the clause absent a strong showing by the plaintiff (not the *forum non conveniens* movant) that is based exclusively on public-interest factors. *Atlantic Marine*, 571 U.S. at 64 ("[A] district court may consider arguments about public-interest factors **only**.") (emphasis added); *id.* at 66 ("[T]he party acting in violation of the forum-selection clause…must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer.").

BT cannot make a persuasive showing (against England as a forum) on the first public-

---

[9] *But see Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (the only Third Circuit case cited in the "validity" section of *Olde Homestead*, mentioning "validity" only in the context of an enforceability inquiry).

interest factor, "the administrative difficulties flowing from court congestion."  *Id.* at 62 n.6 (quotation marks omitted).  Both the "Commercial Court" and the "Patents Court" in England offer relatively quick trial dates, suggesting a lack of court congestion.[10]

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Furthermore, if there were any "local interest" in having this dispute "decided at home," that would seem to favor England as much if not more than this District.  BT plc is incorporated under English law; and BT plc maintains headquarters in England.  Complaint at ¶ 7.  Fortinet, in turn, maintains two offices in England, and none in Delaware.  *See* Schmidt Decl. at ¶ 3.[11]

Nor could BT make a showing for the third public-interest factor, "the interest in having the trial of a diversity case in a forum that is at home with the law."  *Atlantic Marine*, 571 U.S. at 62 n.6 (quotation marks omitted).  That is because this is not a "diversity case."  Complaint at ¶ 11 (asserting subject matter jurisdiction without reference to the diversity statute).  Even assuming generously (without any support from *Atlantic Marine*) that this public-interest factor could be re-stated and broadened to mean the public interest in having each forum tasked with applying laws with which it is familiar or competent, that would not favor BT either.  That is for at least two reasons.  **First,** ██████████████████████████████████████████

---

[10] *See, e.g., Civil Justice Statistics Quarterly: January to March 2018*, available at: https://www.gov.uk/government/statistics/civil-justice-statistics-quarterly-january-to-march-2018 (noting that during a recent period the time to trial for multi and fast track claims averaged 56.7 weeks).

[11] *See also* https://www.fortinet.com/corporate/about-us/contact-us.html.

███████████████████████████ **Second**, even if granting the instant motion means that an English court may in the future be tasked with addressing questions of U.S. patent law, other U.S. district courts have already found it reasonable for foreign courts to do so. *See, e.g.*, *Martin*, 907 F. Supp. 2d 401 (enforcing a forum-selection clause, finding that U.S. patent claim issues could be adjudicated by English courts); *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 806 F.2d 1045 (Fed. Cir. 1986) (same, Italian courts); *Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209 (W.D.N.Y. 1986) (same).

      *ii.*    ███████████████████████████████████████████

The Supreme Court in *Atlantic Marine* was repeatedly clear that an applicable forum-selection clause must be enforced on a *forum non conveniens* motion unless the plaintiff in an "exceptional" and "unusual" case can meet a "heavy burden" to show that public-interest factors—and no other considerations—weigh against it. 571 U.S. at 62-64. As discussed above, BT cannot meet that burden in this case by referring to public-interest factors. Nonetheless, the Third Circuit in a post-*Atlantic Marine* decision has arguably suggested that an additional factor may be considered when deciding the enforceability of a forum-selection clause, namely "the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable." *Collins*, 874 F.3d at 186. Fortinet asks this Court not to apply that aspect of *Collins* for two reasons and—even if this Court were to apply that aspect of *Collins*—it would not change the result here for a third reason.

**First**, the Third Circuit in *Collins* was not tasked with resolving any dispute of law over how the enforceability of an asserted forum-selection clause should be determined. *Id.* at 181 ("Collins has not raised as an issue in this appeal the enforceability of the Agreements' forum selection clauses.... Our review focuses accordingly on the clauses' scope."). For that reason,

16

the decision's discussion of what factors may be considered in an enforceability analysis is non-precedential *dicta*. *See United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003) (observing that "statement[s] of law in the opinion which could not logically be a major premise of the selected facts of the decision" are non-binding *dicta*).

**Second**, even if the enforceability discussion in *Collins* were not *dicta*, Fortinet respectfully believes it is contradicted by the Supreme Court's preceding decision in *Atlantic Marine* in one respect. In *Collins*, the Third Circuit recited its own precedent—tracing at least to 2008 case law from the Third Circuit, before *Atlantic Marine* was decided—that:

> [F]our factors normally guide a district court's application of the doctrine of *forum non conveniens* **in the absence of a forum selection clause**:
>
>> **(1)** the amount of deference to be afforded to plaintiffs' choice of forum; **(2)** the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; **(3)** relevant 'private interest' factors affecting the convenience of the litigants; and **(4)** relevant 'public interest' factors affecting the convenience of the forum.

874 F.3d at 186 (quoting 2013 and 2008 decisions from the Third Circuit) (emphasis added). The *Collins* court then noted correctly that while those four factors may be considered when there is **no** forum-selection clause in play, "*Atlantic Marine* instructs that a forum selection clause alters [that] analysis in several ways." *Id*. The *Collins* court also noted correctly that, under *Atlantic Marine*, the "plaintiff's choice of forum" and "arguments about the parties' private interests" may not be considered. *Id*. However, the *Collins* court then stated:

> So then, all we are to consider are the second and fourth factors, which *Atlantic Marine* advises will overcome a forum selection clause in only the most "unusual" and "extraordinary" circumstances.

*Id*. That would be inconsistent with the Supreme Court's holding in *Atlantic Marine*. There, the Supreme Court was clear that in the presence of an applicable forum-selection clause, a district

court may decline to enforce it "only" by considering public-interest factors and nothing else. *Atlantic Marine*, 571 U.S. at 64 ("[A] district court may consider arguments about public-interest factors only."). That holding from *Atlantic Marine* means that only the Third Circuit's "fourth" factor for a standard *forum non conveniens* analysis ("relevant 'public interest' factors…") may be considered when assessing the enforceability of a forum-selection clause. It does not mean— and *Atlantic Marine* contradicts the holding—that the Third Circuit's "second" factor ("the availability of an adequate alternative forum where…plaintiffs' claims are cognizable") may be considered when a forum-selection clause is present.

**Third**, even if this Court were to consider whether English courts represent an "adequate alternative forum," that would not change the outcome of this motion. ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮ It is also likely the case that "plaintiffs' claims are cognizable" in England, even if based on U.S. patents. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ When the defendant then moved to dismiss under *forum non conveniens*, the plaintiff argued that English courts would refuse to consider U.S. patent issues.[12] The court disagreed, however, and enforced the forum-selection clause. In doing so, the court cited ample authority to show that English courts (like the courts of Italy, the U.S. and Japan) were willing to adjudicate foreign patent rights:

---

[12] The fact that the *Martin* court considered this issue at all, in deciding the defendant's *forum non conveniens* motion, does not undermine Fortinet's position above that such a consideration is not permitted in light of *Atlantic Marine*. The *Martin* case was decided in 2012, prior to the Supreme Court's 2013 *Atlantic Marine* decision.

[T]he Federal Circuit has enforced a forum selection clause that permitted an Italian court to interpret a United States patent. *See Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 806 F.2d 1045 (Fed. Cir. 1986). And, the Court is aware of some authority suggesting that the courts of England are willing to apply United States patent law. *See, e.g., Celltech Chriroscience Ltd v. MedImmune Inc.*, [2003] EWCA (Civ) 1008, 2003 WL 21554593 (Eng.) (deciding whether doctrine of equivalents applied to patent in a license agreement and noting that "[i]t is not disputed that the issue is to be determined in accordance with the Patent Law of the United States"); Eric Chan, *Asserting Foreign Patent Claims in U.S. Federal Courts: What's Left after Voda v. Cordis?*, 18 ALB. L.J. SCI. & TECH. 1, 40 (2008) (noting that courts in Japan and England have decided patent issues under United States law).

907 F. Supp. 2d at 416. Since *Martin* was decided in 2012, subsequent decisions of English courts have further supported the conclusion. *See, e.g., Chugai Pharm. Co. Ltd. v. UCB Pharma S.A.*, [2018] EWHC 2264 (Pat), [53] ("It is common ground that the question of infringement in this case is to be determined under U.S. law."); *Chugai Pharm. Co. Ltd. v. UCB Pharma S.A.*, [2017] EWHC 1216 (Pat) (expressing satisfaction at ¶¶ 45-47 that English courts could adjudicate infringement questions for a U.S. patent).

## VI.   **FORTINET'S ALTERNATIVE REQUEST**

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████  *See* Section V(b), above (citing *Moose Toys*). In the event, however, that this Court were not currently persuaded ████████████████████████████████████████

████████ then Fortinet respectfully asks in the alternative for two things. **First**, BT plc's claims should still be dismissed for *forum non conveniens*, even if BT Inc.'s claims remain here for the time being. *See La Fondiaria Assicurazione, S.P.A. v. Ocean World Lines, Inc.*, No. 02-CV-40, 2002 WL 31812679, at *2 (S.D.N.Y. Dec. 12, 2002) (enforcing a forum-selection clause for a third-party claim, recognizing it would result in simultaneous lawsuits in France and the U.S. for one of the named parties: "it might be more efficient to dispose of the entire case in one court,

but that is not the standard for overcoming a forum selection clause"); *Street, Sound Around Elecs., Inc. v. M/V Royal Container*, 30 F. Supp. 2d 661, 663 (S.D.N.Y. 1999) (rejecting the argument that a forum-selection clause should not be enforced because to enforce it might result in proceedings in New York and in Germany: "[t]he possibility of multiple parallel proceedings was a contingency entirely foreseeable to plaintiff when it agreed to the forum selection clause").

**Second**, Fortinet would ask for limited, threshold discovery into the question (a mixed question of law and fact) of ████████████████████████████████████████████████ ████████████████████████████████████████████████████████

If this Court retains jurisdiction over BT Inc.'s claims for the time being—as it should not do—then *forum non conveniens* issues specific to BT Inc. should be resolved as an initial, jurisdictional matter (before proceeding with patent litigation).

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, Fortinet respectfully asks the Court to dismiss all Counts pursuant to Rule 12(b)(1) and/or the doctrine of *forum non conveniens*.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____

Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
began@mnat.com

*Attorneys for Defendant*

OF COUNSEL:

John (Jay) Neukom
James Y. Pak
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA  94301
(650) 470-4500

October 1, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 9, 2018, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                       *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
*Attorneys for Plaintiffs*

James H. Shalek, Esquire                                        *VIA ELECTRONIC MAIL*
Baldassare Vinti, Esquire
Nolan M. Goldberg, Esquire
Fabio E. Tarud, Esquire
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY  10036-8299
*Attorneys for Plaintiffs*


                                        */s/ Jack B. Blumenfeld*
                                        _____
                                        Jack B. Blumenfeld (#1014)